**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ISAIAH HUNTER-BEY, | ) | CASE NO. 1:25-CV-1441 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL ARMSTRONG |
| ALLEN MILLER, *et al.*, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendants. | ) | |

## I.    INTRODUCTION

Plaintiff Isaiah Hunter-Bey alleges that his landlord (Defendant Community Property Solvers LLC) and its property manager (Defendant Allen Miller) committed various constitutional violations, statutory violations, and common law torts against him in the course of managing his tenancy. (*See generally* Compl., ECF No. 1.) Mr. Hunter-Bey seeks $30 million in damages, a temporary restraining order and preliminary injunction, a declaratory judgment, and costs. (*Id.*, PageID# 19–20; *see also* Mot. Temporary Restraining Order, ECF No. 4; Mot. Preliminary Injunction, ECF No. 5.) He also requests that the Court refer the Defendants to the U.S. Department of Justice and the U.S. Department of Housing and Urban Development for investigation. (*Id.*)

This matter has been referred to me for pretrial supervision, for the resolution of non-dispositive motions, and to conduct appropriate proceedings and prepare a report and recommendation with respect to dispositive motions. (Referral Order, ECF No. 17.)

In the time since I issued my case management order on January 15, 2026, Mr. Hunter-Bey has failed to attend two hearings.  He has stated clearly and repeatedly that he will not appear, even remotely, for a case management conference despite several Court orders requiring his attendance and five warnings that failure to appear may result in the recommendation of sanctions, including

dismissal with prejudice. And he insists that the Court must manage this litigation in a "written only" format going forward.

For the following reasons, I RECOMMEND that the Court DISMISS this action WITH PREJUDICE for failure to prosecute and to comply with this Court's orders.

## II.     PROCEDURAL BACKGROUND

On July 9, 2025, Mr. Hunter-Bey filed suit *pro se* against the Defendants. (Compl., ECF No. 1.) He alleged violations of the Fair Housing Act (Counts 1–2), disability discrimination in violation of the Americans with Disabilities Act (Count 3), "constructive eviction and interference with civil process" (Count 4), intentional infliction of emotional distress (Count 5), "negligence and reckless endangerment" (Count 6), violations of Ohio statutory landlord–tenant law (Count 7), disability discrimination under Ohio law (Count 8), telecommunications harassment under Ohio law (Count 9), a civil action for criminal conduct under Ohio law (Count 10), unjust enrichment (Count 11), a claim for "fraudulent conveyance, ownership concealment, and corporate veil misuse" under Ohio law (Count 12), a civil RICO claim (Count 13), a claim for "obstruction of justice" (Count 14), and a claim for "interference with educational and vocational advancement" (Count 15). (Compl., ECF No. 1, PageID# 12–18.)

Contemporaneously, Mr. Hunter-Bey filed motions for a temporary restraining order ("TRO") and a preliminary injunction. (Mot. TRO, ECF No. 4; Mot. PI, ECF No. 5.) Mr. Hunter-Bey sought a TRO preventing the Defendants from (1) evicting him, threatening eviction, or "any coercive conduct," (2) retaliating against him or other witnesses, (3) tampering with evidence "or leased property," or (4) engaging in "any act that endangers [his] housing or mental health." (Mot. TRO, ECF No. 4, PageID# 38.)

Mr. Hunter-Bey sought a preliminary injunction preventing the Defendants from (1) harassing or intimidating him or other tenants; (2) retaliating against any witness or "co-resident," (3) evicting or threatening to evict him or other tenants due to their participating in the lawsuit, or (4) altering, destroying, or concealing any physical or digital evidence related to the case. (Mot. PI, ECF No. 5, PageID# 42.)

In the same filing packet, Mr. Hunter-Bey filed a motion to freeze the Defendants' assets (Mot. Freeze Assets, ECF No. 6, PageID# 45) and a motion to restrict Mr. Miller from traveling outside of the Northern District of Ohio and to require him to surrender his passport (Mot. Travel Ban, ECF No. 7, PageID# 48).

The Court thereafter referred Mr. Hunter-Bey's action to me for pretrial case management, for the resolution of non-dispositive motions, and to conduct appropriate proceedings and prepare a report and recommendation with respect to dispositive motions. (Referral Order, ECF No. 17.)

The Court issued summonses to the U.S. Marshal for service on July 28, 2025. (ECF No. 22.) The summons to Mr. Miller was returned executed on August 4, 2025. (ECF No. 23.) The summons to Community Property Solvers LLC was returned "due to incorrect address from FedEx" on August 13, 2025. (ECF No. 25.)

Mr. Miller initially filed an answer *pro se* on August 7, 2025. (ECF No. 24.) He twice attempted to answer on behalf of Community Property Solvers LLC. (*See id.*) I informed him that the corporate entity must be represented by an attorney. (*See* Orders [non-document], Sept. 12, 2025 and Sept. 30, 2025.)

On August 15, 2025, Mr. Hunter-Bey filed a motion asking the Court to issue an alias summons to Community Property Solvers LLC's registered agent at an address in Garfield

3

Heights. (ECF No. 27.) The clerk mailed the summons by regular U.S. Mail on the same day, and later the summons was re-sent by certified mail. (*See* ECF No. 62.)

In the meantime, Mr. Hunter-Bey filed a motion for a default judgment against the corporate defendant. (ECF No. 43.) On October 22, 2025, counsel entered an appearance for the Defendants and requested additional time to file a response in opposition to Mr. Hunter-Bey's various pending motions. (ECF Nos. 49, 50.) I granted the motion. (Order [non-document], Oct. 23, 2025.)

The Defendants filed answers and opposition briefs on November 23 and November 24, 2025. (ECF Nos. 66 through 77.)

Mr. Hunter-Bey filed a "corrected" motion for default and a motion for sanctions on November 24, 2025. (ECF Nos. 80 through 82.) He filed a number of evidentiary exhibits in December 2025 and requested additional time to respond to the Defendants' opposition briefs. (ECF Nos. 83 through 92.) I granted the motion, and he filed a consolidated response on December 30, 2025. (ECF No. 93.)

On January 11, 2026, Mr. Hunter-Bey filed a motion for summary judgment. (ECF No. 95.)

On January 13, 2026, Mr. Hunter-Bey filed a motion requesting that the Court schedule a Rule 26(f) discovery conference; he wrote that a Rule 26(f) conference "will promote orderly case management and judicial economy." (ECF No. 96, PageID# 700.) He said he "stands ready to confer with Defendants." (*Id.*)

Two days later, the Court issued a case management order setting a case management conference for February 25, 2026. (ECF No. 97, PageID# 703.) The order directed the parties to confer on a proposed discovery plan pursuant to Rule 26(f). (*Id.*, PageID# 704.) The order directed

the parties to meet in person or over the phone or remote technology, as "exchanging competing written proposals by email or otherwise is rarely acceptable or productive." (*Id.*)

On February 13, 2026, Mr. Hunter-Bey filed a motion to reschedule the CMC. (ECF No. 98.) He explained that he anticipated extensive preparation for the CMC, including complying with the Rule 26(f) conference, and his academic obligations made it difficult for him to adequately prepare for and participate in these litigation steps on the current schedule. (*See id.*, PageID# 714– 15.) He said he wanted to "[p]roperly prepare for the Rule 26(f) planning meeting" and "[p]articipate in the Case Management Conference fully prepared." (*Id.*, PageID# 715.) He requested that the CMC be set for a Friday because he does not have classes on Fridays. (*Id.*, PageID# 716.)

On the same day, the Court granted Mr. Hunter-Bey's motion. (Order [non-document], Feb. 13, 2026.) The Court set the CMC for March 27, 2026—a Friday. (*Id.*)

On March 19, 2026, Mr. Hunter-Bey filed an "Emergency Renewed Motion for Reasonable Accommodations . . . With Specific Application to Rule 26(f) Conference Obligations and All Associated Participation Requirements." (ECF No. 99.) In the motion, Mr. Hunter-Bey wrote that he would be "functionally excluded from participation in this litigation" unless the Court "transition[ed] to a written-only format." (*Id.*, PageID# 725–26.) He said that "real-time speaking is not a viable method of participation" for him, as doing so in this proceeding would lead to "intense physiological responses" that risk his health. (*See id.*, PageID# 731.) In the alternative, Mr. Hunter-Bey requested a number of accommodations, including real-time captioning and permission to use assistive technologies like speech-to-text technologies. (*Id.*, PageID# 729.)

By way of further background, Mr. Hunter-Bey had filed a motion for reasonable accommodations under the Americans with Disabilities Act in July 2025. (ECF No. 3.) He filed a

5

petition the same month seeking to waive copy fees under 28 U.S.C. § 1915 and asking again for what he called reasonable accommodations for disabilities. (Petition, ECF No. 19.) He filed another motion for reasonable accommodations in September 2025. (ECF No. 32.)

On September 12, 2025, the Court denied these motions without prejudice, largely as being premature. (ECF No. 34.) In explaining that decision, the Court wrote as follows:

> Mr. Hunter-Bey identifies that he has certain diagnosed mental health conditions that he says qualify as disabilities under the Americans with Disabilities Act. (See Mot., ECF No. 3, PageID# 34; Mot., ECF No. 32, PageID# 123.) He asks for a number of accommodations that he characterizes as reasonable, nonprejudicial adjustments that are necessary to allow him to participate meaningfully in this litigation.
>
> I have reviewed each request carefully. Broadly speaking, Mr. Hunter-Bey requests: (1) to be able to use assistive technology, the functions of which he began to explain in his filings but remain unclear; (2) extended response time and a structured questioning protocol during hearings; (3) deadline extensions when necessary; (4) the ability to participate in some proceedings remotely; (5) reasonable breaks during proceedings upon request; (6) "simplified and plain-language communications, including written summaries of key rulings"; (7) scheduling considerations to allow proceedings to take place in the mornings; and (8) access to a private, quiet room during in-person proceedings.
>
> I appreciate Mr. Hunter-Bey informing the Court of his conditions and setting forth what he feels he needs to participate meaningfully in this litigation. That said, most of his requests are premature at this early stage of the proceedings in light of the fact that Mr. Hunter-Bey has not perfected service over all the defendants. There are no conferences or hearings scheduled, let alone in-person hearings. Mr. Hunter-Bey has shown no difficulty participating in the case to date, as evidenced by his filing a number of motions on a wide variety of subjects.
>
> With respect to deadlines, Mr. Hunter-Bey (as with any litigant) may move for an extension on individual matters and the Court will address those requests on a case-by-case basis.
>
> With respect to the specific manner of conducting hearings or other proceedings, I also find it prudent to address any accommodations that may be appropriate on a case-by-case basis. What is reasonable and fair to the Defendants in one proceeding, for instance, may not be suitable for another kind of hearing. I also intend to take up the matter of assistive technology if

6

and when I meet with the parties for a case management conference. I need more specific information about the specific technology Mr. Hunter-Bey wishes to use, at which point I will be able to evaluate the appropriateness of its use on a case-by-case basis and in the proper context.

With respect to Mr. Hunter-Bey's request that the Court provide—above and beyond its written orders, docket entries, and statements on the record— additional summaries of key rulings or procedural steps, that request is denied. The Court speaks through its docket. Mr. Hunter-Bey is choosing to proceed without counsel, and the Court cannot provide legal advice to Mr. Hunter-Bey or any other individual litigant.

Therefore, I will deny Mr. Hunter-Bey's motions for reasonable accommodation **without prejudice**. He may raise his requested accommodations on a case-by-case basis as additional proceedings arise, at which time I will be able to balance the request against the prejudice to the Defendants—and considering that Mr. Hunter-Bey is choosing to proceed without counsel in this matter—in its appropriate context.

(Order, ECF No. 34, PageID# 142.)

Turning back to Mr. Hunter-Bey's motion directed at the case-management conference, on March 24, 2026, the Court waived the requirement for Mr. Hunter-Bey to confer on a discovery plan with the Defendants in person or by phone or remote technology, but it otherwise denied ECF No. 99, stating as follows in relevant part:

Among other things, Mr. Hunter-Bey requests, pursuant to the ADA and the Rehabilitation Act, that the Court "transition to a written-only format" because "real-time speaking is not a viable method of participation" for him due to his medical and mental health conditions. The motion is DENIED. The ADA and the Rehabilitation Act do not apply to the federal courts. *See Zang v. Zang*, Nos. 1:11cv884, 1:12cv629, 2013 WL 4777092, at *2 (S.D. Ohio Sept. 5, 2013); *Roman v. Jefferson at Hollywood LP*, 495 F. App'x 804, 806 (9th Cir. 2012); *Anders v. South Carolina*, No. 2:24-cv-6311, 2025 WL 1169191, at *5 (D.S.C. Mar. 31, 2025).

As the Court previously stated (ECF No. 34 ), it is mindful of Mr. Hunter-Bey's medical and mental health conditions and will consider requested accommodations on a case-by-case basis.

Under the unique circumstances of this case, the Court WAIVES the Rule 26(f) meet-and-confer requirement.

7

> But the Court finds that a CMC, at which both sides appear to discuss case-management issues, is necessary in this case. This case cannot be effectively managed in a "written-only format." The Court will address all aspects of case management with the parties at the upcoming CMC.

(Order [non-document], Mar. 24, 2026) (line breaks added for readability).

Mr. Hunter-Bey filed a Rule 72(a) objection to that order, and the objection is pending. (ECF No. 101.) In the objection, Mr. Hunter-Bey reiterated that "real-time interaction and speech-based communication" are not possible for him and wrote that the fact that federal judges handle both civil and criminal matters "only add[s] to the anxiety regarding the authority exercised within these proceedings and intensifies his sense of vulnerability within the courtroom environment." (*Id.*, PageID# 747.) He said that he "is unable to speak, process, or comprehend the complexities of real-time interactions, particularly in a high-stress environment like a courtroom, whether in person or via Zoom." (*Id.*) He reported that he had "complete[ly] withdraw[n] from verbal communication and interactions over the past five years" in order to protect his health. (*Id.*, PageID# 751–52.) He wrote that "written communication is his only effective mode of participation in these proceedings." (*Id.*, PageID# 756.)

On March 26, 2026, Mr. Hunter-Bey filed a "Notice of Conditional Participation in March 27th CMC Conference." (ECF No. 102.) He wrote that he would "only be able to participate in the CMC and any associated obligations through written communication." (*Id.*, PageID# 761.) He requested that the Court "affirm that his participation will proceed through written-only communication." (*Id.*, PageID# 761–62.)

On the same day, Mr. Hunter-Bey filed a "Notice of Written Appearance for Case Management Conference." (ECF No. 103.) In that document, Mr. Hunter-Bey states that he "is present for" the CMC and would be "participating via this written submission." (*Id.*, PageID# 765–66.) He proposed a timeline for discovery, dispositive motions, and trial. (*Id.*, PageID# 766.)

8

On March 27, 2026, the Court issued an order addressing ECF Nos. 102 and 103; the Court stated as follows, in relevant part:

> The Court again reiterates that this case cannot be effectively managed in a "written-only" format. Plaintiff is hereby ORDERED to attend the Zoom case management conference on 3/27/2026 at 1:30 p.m. **Plaintiff is hereby on notice and expressly warned that if he fails to appear at the Zoom case management conference that the Court will consider recommending the issuance of sanctions, including the dismissal of this case with prejudice, for failure to comply with court orders and to appear as required.** See Bowles v. City of Cleveland, 129 Fed. App'x 239, 2005 WL 953853 (6th Cir. 2005).

(Order [non-document], Mar. 27, 2026) (emphasis in original).

Mr. Hunter-Bey ultimately failed to appear remotely for the CMC as required. (*See* Order [non-document], Mar. 27, 2026). The Court therefore set a show-cause hearing for April 17, 2026, ordering Mr. Hunter-Bey to appear and show cause why sanctions should not be recommended. (*See id.*)

On April 9, 2026, Mr. Hunter-Bey filed a motion for reconsideration. (ECF No. 105.) In that filing, he argued that the Court "overlooked and misapprehended critical facts and controlling principles." (*Id.*, PageID# 797.) He argued that the Court erred in not accepting his written submission (ECF No. 103) as his appearance at the CMC and by not "analyz[ing] any workable alternative before denying accommodation." (ECF No. 105, PageID# 798.) He says that the Court "[d]id not evaluate whether written participation was sufficient." (*Id.*, PageID# 799.) He asked the Cout to recognize his written submission as "valid participation" at the CMC, to "reassess the requirement of real-time oral participation" in this case, to "consider a workable alternative" to real-time communication, and to "clarify" that he did not fail to appear as required. (*See id.*, PageID# 802.)

On April 14, 2026, the Court issued an order denying reconsideration. (ECF No. 106.) In the order, the Court stated as follows in relevant part:

> At the outset of this analysis, the Court emphasizes that it is sympathetic to Mr. Hunter-Bey's condition. It has carefully reviewed his description of his experiences. And it acknowledges that litigation is inherently stressful for any participant.
>
> But it must be equally acknowledged that Mr. Hunter-Bey initiated this lawsuit. Mr. Hunter-Bey chose to file suit in this district. And he seeks a judgment of $30 million against the Defendants, who are also entitled to fair treatment and due process in this matter.
>
> . . .
>
> With respect to the case-management conference, the Court considered and rejected the argument that this case can be effectively managed solely through written submissions. For example, Mr. Hunter-Bey's written submission (ECF No. 103) addresses merely his proposed time frames for fact discovery, dispositive motion briefing, and trial. It does not address the vast majority of the issues that I would normally discuss with the parties at a CMC. How will the parties handle electronically stored information, and what is proportional to the needs of this case? How have the parties preserved ESI? Are there issues in the case that are moot, considering that Mr. Hunter-Bey has moved from the Defendants' property, and what are the parties' positions on such pending motions? What discovery is needed by the parties before an injunction hearing, assuming that default judgment is not appropriate? How would the parties suggest parceling out the injunction-related proceedings from the merits proceedings? Is this a case where a protective order would be appropriate? What discovery is needed on the merits, and what is the anticipated scope of written, deposition, and expert discovery? The Court notes that these examples are only a few of the many issues that might be discussed at the case management conference, and this is not intended to be an exhaustive list.
>
> This case has been pending for eight months, and it is simply not feasible, economical, or fair to address these threshold case-management issues through a series of lengthy back-and-forth written submissions before the initial case-management schedule can even be set.
>
> Additionally, while the Court found that a written-only format is not manageable for this case, it has already provided a number of accommodations. After Mr. Hunter-Bey specifically requested a Rule 26(f) conference and a case-management schedule, the Court promptly granted one. And then the Court provided for a remote hearing, as opposed to one

10

> in person, and it scheduled the conference for a Friday to accommodate Mr. Hunter-Bey's academic schedule (as he requested).

(ECF No. 106, PageID# 813–14 (internal citations omitted)).

On April 15, 2026, Mr. Hunter-Bey filed a document styled as a "Notice of Continued Constitutional Deprivation of Plaintiff's Fifth Amendment Right to Access the Court." (ECF No. 107.) In the filing, Mr. Hunter-Bey wrote that the Court was requiring him "to appear in an inaccessible format that is a medical impossibility" in light of the "compounding nature of his numerous diagnoses." (*Id.*, PageID# 826.) He also filed an objection to ECF No. 106 and emergency motions to vacate the show-cause hearing. (ECF Nos. 108, 109.) He wrote that a "live video" hearing would be "medically harmful/impossible." (ECF No. 108, PageID# 833.)

On April 17, 2026, I denied his motion to vacate the show-cause hearing, stating as follows in relevant part:

> For all the reasons set forth at length in this Court's April 14, 2026 Order denying Plaintiff's Motion for Reconsideration (ECF No. 106 ), ECF No. 109 is DENIED. Plaintiff is ORDERED to appear before this Court today at 1:00 p.m. via Zoom to show cause why this Court should not recommend sanctions for failure to comply with court orders and appear as required for the case management conference. **Plaintiff is again on notice and expressly warned that failure to appear at the Zoom show cause hearing may result in the recommendation of immediate sanctions, including dismissal of his claims with prejudice, monetary penalties, or any other appropriate sanction.**

(Order [non-document], Apr. 17, 2026) (emphasis in original).

On the same day, Mr. Hunter-Bey filed a document styled as a "Notice of Plaintiff's Continued Written Appearance and Attempts at Participation While Objecting to the Court's Continued Exclusion from Participation in these Proceedings." (ECF No. 109.) He wrote that he is being asked "to communicate in the one aspect that his disability does not allow." (ECF No. 110, PageID# 845.)

11

Mr. Hunter-Bey ultimately failed to appear at the Zoom show-cause hearing as ordered, leading the Court to issue the following order:

> The Court attempted to hold the Zoom show cause hearing on 4/17/2026. Attorney Mark M. Turner, counsel for Defendants Allen Miller and Community Property Solvers, LLC, timely appeared in the Zoom waiting room. Plaintiff failed to appear. Plaintiff's absences have delayed and hindered the orderly progression of this case. The Court will take this matter under advisement.

(Order [non-document], Apr. 17, 2026.)

This Report and Recommendation follows.

## III.    LAW AND ANALYSIS

"It is well settled that a district court has the authority to dismiss sua sponte a lawsuit for failure to prosecute." *Carpenter v. City of Flint*, 723 F.3d 700, 704 (6th Cir. 2013).

Rule 41(b) of the Federal Rules of Civil Procedure provides:

> If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19— operates as an adjudication on the merits.

Fed. R. Civ. P. 41(b); *see also Link v. Wabash R.R. Co.*, 370 U.S. 626, 629–31 (1962) (holding that the reference to a defendant's motion in the rule does not abrogate the court's inherent power to dismiss sua sponte for failure to prosecute or to comply with litigation rules or court orders); *Little v. Yeutter*, 984 F.2d 160, 162 (6th Cir. 1993) (stating that "[u]nder . . . Rule 41(b), the district court has the authority to dismiss a case for failure to prosecute" and reviewing such an order for abuse of discretion).

The U.S. Supreme Court has recognized that "[t]he power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid

12

congestion in the calendars of the District Courts." *Link*, 370 U.S. at 629–30; *see also Palasty v. Hawk*, 15 F. App'x 197, 199 (6th Cir. 2001) (stating that dismissal for failure to prosecute is "available to the district court as a tool to manage its docket and to avoid unnecessary burdens on the court and opposing parties").

The Sixth Circuit has identified four factors relevant to the determination of whether a case is properly dismissed for failure to prosecute under Rule 41(b):

> 1) whether the party's failure is due to willfulness, bad faith, or fault; 2) whether the adversary was prejudiced by the dismissed party's conduct; 3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and 4) whether less drastic sanctions were imposed or considered before dismissal of the action.

*Rogers v. City of Warren*, 302 F. App'x 371, 376 (6th Cir. 2008) (affirm)); *Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir. 1999).

While none of the four factors is usually outcome dispositive, a case is "properly dismissed . . . where there is a clear record of delay or contumacious conduct." *Knoll*, 176 F.3d at 363. "Contumacious conduct refers to behavior that is perverse in resisting authority and stubbornly disobedient." *Carpenter v. City of Flint*, 723 F.3d 700, 704-05 (6th Cir. 2013) (internal quotation marks and citations omitted) . It shows "either an intent to thwart judicial proceedings or a reckless disregard for the effect of . . . conduct on those proceedings." *Id.* (citations omitted).

"Determining whether dismissal is the appropriate sanction is a matter within the discretion of district courts." *Jackson v. Sterilite Corp.*, Nos. 5:13CV861, 5:13CV862, 2014 WL 5307911 at *2 (N.D. Ohio Oct. 16, 2014) (citing *Wright v. Coca-Cola Bottling Co.*, 41 F. App'x 795, 795 (6th Cir. 2002)); *see also Allen v. Stark State College*, No. 5:17CV02706, 2019 WL 3387772, at *6 (N.D. Ohio July 26, 2019).

### 1. Willfulness, Bad Faith, or Fault

Mr. Hunter-Bey initiated this lawsuit and seeks a $30 million judgment against the Defendants. He requested a Rule 26(f) conference and a case-management order in January 2026, without raising an argument that he could not participate in either unless through written submissions. (ECF No. 96.) After the Court set a case-management schedule, requiring a live video discovery conference and setting a live video CMC, Mr. Hunter-Bey did not object or otherwise notify the Court that he could not participate except through written submissions. Indeed, he filed a motion to continue the CMC to a date which would be more convenient for him and expressed his intent to prepare for the Rule 26(f) meeting and "participate in the Case Management Conference fully prepared." (ECF No. 98, PageID# 715.)

It was not until March 19, 2026—more than two months after the case-management order was issued and only eight days before the scheduled CMC—that Mr. Hunter-Bey raised the argument that he could not participate in *any* live interactions in his case.

The Court considered and denied the request, finding that "This case cannot be effectively managed in a "written-only format." (Order [non-document], Mar. 24, 2026.) Despite the order, Mr. Hunter-Bey filed written submissions. (ECF Nos. 101, 102, 103; Order [non-document], Mar. 27, 2026.) The Court then clearly reiterated its finding that that this case cannot be effectively managed in a "written-only" format and ordered Mr. Hunter-Bey to attend the remote CMC. (Order [non-document], Mar. 27, 2026).

Despite these orders, Mr. Hunter-Bey failed to appear for the CMC as required. (Order [non-document], Mar. 27, 2026).

14

The Court therefore set a show-cause hearing and ordered Mr. Hunter-Bey to appear remotely for the hearing. (*Id.*) Mr. Hunter-Bey failed to appear as required. (Order [non-document], Apr. 17, 2026.)

I find that Mr. Hunter-Bey's conduct has been contumacious and has caused delay. This case has been pending since July 2025, and Mr. Hunter-Bey's failure to attend the CMC or the show cause hearing—proceedings for which he received notice and warning that his appearance would not be excused—has delayed the issuance of a case management schedule. Moreover, he has made clear that he will not appear for any live conferences in his case. I fail to see how this case can be effectively managed in light of that position.

Though Mr. Hunter-Bey has continued actively filing papers with this Court, he is not empowered or entitled to unilaterally dictate the manner in which this Court conducts its pretrial proceedings. His adamant refusal to appear for a pretrial conference—even remotely, and without offering any specific technology solution or accommodation short of fully written litigation—displays either an intent to thwart judicial proceedings or a reckless disregard for the effect of his conduct on these proceedings. *Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005); *Knoll*, No. 1:96-cv-00067-DCN (N.D. Ohio 1997) (Nugent, J.), *aff'd*, 176 F.3d 359 (6th Cir. 1999) (attorney refused to try the case on the first day of trial); *see also Jackson v. Coronado*, No. 21-1007, 2021 WL 6335259, at *2 (6th Cir. Nov. 22, 2021) (refusal to attend multiple hearings, including for purported health reasons, showed bad faith where the plaintiff did not demonstrate that he was unable to attend). Accordingly, the first factor weighs in favor of dismissal.

### 2.  Prejudice to the Defendants

The Defendants have been prejudiced by Mr. Hunter-Bey's actions. They have exerted time and expended resources in defending this case. Their counsel appeared for a case-

management conference and a show-cause hearing that could not go forward because Mr. Hunter-Bey failed to appear. *Jackson*, 2021 WL 6335259, at *3 ("The defendants were ready to take the next step, but Jackson's conduct prevented proceedings from going forward.") They have responded to numerous filings from Mr. Hunter-Bey. Mr. Hunter-Bey's failure to appear at these conferences has delayed the issuance of a case-management order. Accordingly, the second factor also weighs in favor of dismissal.

### 3. Frequent Warnings

Mr. Hunter-Bey was warned as early as January 15, 2026, that failure to attend the CMC "may result in dismissal of the lawsuit . . . or other appropriate sanctions." (ECF No. 97, PageID# 703.)

The Court again warned Mr. Hunter-Bey on March 27, 2026, that failure to appear would cause the Court to consider recommending sanctions, "including the dismissal of this case with prejudice, for failure to comply with court orders and to appear as required." (Order [non-document], Mar. 27, 2026.)

When Mr. Hunter-Bey failed to appear, the Court set a show-cause hearing, again warning that failure to appear may result in the recommendation of "immediate sanctions, including dismissal of his claims with prejudice . . . ." (Order [non-document], Mar. 27, 2026.)

In denying Mr. Hunter-Bey's motion for reconsideration, the Court reminded Mr. Hunter-Bey that it expected him to appear at the show cause hearing and that "failure to appear . . . may result in the recommendation of immediate sanctions, including dismissal of his claims with prejudice . . . ." (ECF No. 106, PageID# 815.)

In denying Mr. Hunter-Bey's emergency motion to vacate the hearing, the Court again reiterated this warning. (Order [non-document], Apr. 17, 2026.)

16

After five warnings over the course of several months that the Court may dismiss his case with prejudice for failure to appear for a CMC, Mr. Hunter-Bey still failed to appear as required. Accordingly, this factor weighs heavily in favor of dismissal.

### 4. Consideration of Less Severe Sanctions

As for the fourth factor, Mr. Hunter-Bey has not adequately responded to attempts to impose a less severe sanction than dismissal. The Court has made efforts to accommodate him by holding the CMC and show-cause hearing remotely and on the weekday that Mr. Hunter-Bey prefers. It has waived the Rule 26(f) conference requirement. It has offered Mr. Hunter-Bey the opportunity to show cause for failing to appear for the CMC, so that the parties can work through how to move this case forward. It has indicated a willingness to consider requested accommodations on a case-by-case basis.

Mr. Hunter-Bey, despite requesting the CMC, has skipped two hearings and continues to inundate the Court with filings in which he states clearly and repeatedly that he now refuses to engage in any kind of live interaction in this litigation that he initiated. He provides no workable alternative for moving this case forward and refuses to participate except in his preferred way. *See Allen v. Stark State College*, Nos. 5:18cv464, 5:17cv2706, 5:18cv1545, 2019 WL 4918671, at *6 (N.D. Ohio Oct. 4, 2019) ("[T]he Court will not reconsider its decision that lesser sanctions would have been more appropriate. Plaintiff makes quite clear . . . that she had no intention of complying with either [the Court's] Orders or her discovery obligations . . . until her conditions were met; i.e., until Defendants' Motion for Partial Dismissal was resolved and the issue of default was addressed to her satisfaction."). This is so despite the fact that he has requested a jury trial. (ECF No. 1, PageID# 2); *c.f. Thompson v. Mossyssippi, LLC*, NO. 1:23-cv-33-TBM-RPM, 2023 WL 5673955, at *2 (S.D. Miss. Sept. 1, 2023) ("[I]t is [the plaintiff] who filed this lawsuit, has filed a total of

17

nine motions, and has requested a jury trial. So, it is unclear to this Court how [she] intends to prosecute her case to such a vigorous extent from a telephone.").

Under these circumstances, I find that this factor also weighs in favor of dismissal. *See Jackson*, 2021 WL 6335259, at *3 ("Jackson was solely responsible for halting proceedings on both September 14 and 29; everyone else was ready to proceed towards the final pretrial conference and the hearing on Jackson's proposed motions. Simply put, Jackson alone refused to make progress in prosecuting his case when he was given multiple opportunities to do so. Dismissal for failure to prosecute is an appropriate sanction under the case's circumstances."

I have considered the less severe sanction of dismissal without prejudice. But where this case has been pending for nine months, where the Court has given Mr. Hunter-Bey several opportunities to appear, where there has been sufficient leniency and five warnings that failure to appear may result in a recommendation of dismissal with prejudice, and where Mr. Hunter-Bey has nevertheless missed two scheduled hearings and taken the position that the Court cannot ever schedule a hearing in his case, I find that dismissal with prejudice is appropriate.

## 5. Rule 16(f)(1)(C) of the Federal Rules of Civil Procedure

Rule 16(f)(1)(C) of the Federal Rules of Civil Procedure provides an additional basis on which to dismiss this action, as it authorizes courts to dismiss an action where a party fails to comply with a court order.

Fed. R. Civ. P. 16(f)(1)(C) provides:

> On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)–(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order.

"Although pro se plaintiffs are held to less stringent standards than attorneys, cases filed by pro se plaintiffs may still be dismissed if the plaintiff fails to meet court orders." *Rivera v.*

18

*Comm'r of Soc. Sec.*, No. 4:16CV2316, 2017 WL 1683660, at *2 (N.D. Ohio Apr. 11, 2017) (citing *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991) (finding dismissal appropriate for a pro se litigant's claims when dismissal was ordered "because he failed to adhere to readily comprehended court deadlines of which he was well-aware," and noting that the court had been "generous in granting extensions which [the litigant] failed to utilize")).

Here, Mr. Hunter-Bey was required by order to appear at a case management conference. He requested and was granted a continuance of the case management conference, which was set on a Friday to accommodate his schedule. When he failed to appear at the case management conference, the Court set a hearing to discuss his failure to appear. Mr. Hunter-Bey chose not to appear at that hearing, either. He has therefore failed to adhere to court deadlines of which he was clearly well aware, and he has failed to utilize the several extensions granted him to participate in this case. Accordingly, dismissal with prejudice is appropriate.

## IV.    CONCLUSION AND RECOMMENDATION

Based on the foregoing, I **RECOMMEND** that the Court **DISMISS** this action **WITH PREJUDICE** for failure to prosecute and to comply with this Court's orders. If the Court accepts my recommendation, I would further **RECOMMEND** that all pending motions be **DENIED AS MOOT**, and that this case then be closed.

Dated:   April 23, 2026                              /s/ *Jennifer Dowdell Armstrong*
                                                     JENNIFER DOWDELL ARMSTRONG
                                                     UNITED STATES MAGISTRATE JUDGE

19

## V.        NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

> **Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial

20

resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878–79 (6th Cir. 2019).